# EXHIBIT D

Jeremy Singer-Vine
BuzzFeed News
111 E. 18th St.
New York, NY 10003
███████
jeremy.singer-vine@buzzfeed.com

July 20, 2018

Headquarters Air Force/AAII (FOIA)
1000 Air Force Pentagon
Washington, DC 20330-1000
Phone: (703) 693-2735/692-9981
Email: usaf.pentagon.saf-aa.mbx.haf-foia-workflow@mail.mil

**RE: APPEAL - FOIA Request 2018-00661-F**

To Whom It May Concern,

I write to appeal the U.S. Air Force's ("Agency") denial, *see* Ex. A (the "Denial"), issued in response to my 2017-11-16 Freedom of Information Act ("FOIA") request seeking records relating to tours of Air Force One, *see* Ex. B (the "Request").

## BACKGROUND

The requested records relate to invitations to tours of Air Force One.  This request involves a matter of widespread and exceptional media interest.  It is my understanding that least some of the people offered tours of Air Force One are members of Mar-a-Lago.  As my colleague Tarini Parti and I reported, "Members would not confirm or deny that they actually attended [Air Force One Tours], but the invitations would raise more questions about the blurry line between Trump's administration and his family's private businesses.  Although past administrations have given Air Force One tours to friends, family, and even donors, in this case, those attending would have paid Trump's exclusive clubs thousands of dollars annually."[1]  The report was then covered by *Fortune*, *Vox*, *The Week*, *The Hill*, and *New Republic*, in addition to several others.  As noted below, Mar-a-Lago, owned by the President Trump's family, has come under widespread public and media scrutiny for providing its members with unique access to the President.  There can be no doubt of the public's interest to know who has been invited to take, and taken, these tours.

## REQUEST

Based on the overwhelming public interest in this matter, on November 16, 2017, I submitted a FOIA request for:

- All spreadsheets, PDFs, and other documents containing lists of civilians invited or

---

[1] Tarini Parti & Jeremy Singer-Vine, *Some Members Of Trump's Exclusive Clubs Appear To Have Been Invited To An Air Force One Tour*, BuzzFeed News (July 9, 2018), https://www.buzzfeednews.com/article/tariniparti/trump-air-force-one-mar-a-lago-tour.

scheduled to partake in tours of Air Force One between Jan. 20, 2017 and the date on which the search for these records is completed.

## DENIAL

On June 28, 2018, the Agency issued its response to my request.  According to the Denial, the request was "partially denied under the FOIA Exemption (b)(6).  FOIA Exemption (b)(6) exempts disclosure of personal information that would constitute a 'clearly unwarranted' invasion of privacy if disclosed."  According to the Denial, I did not "demonstrate[] a sufficient public interest that outweighs individuals' right to privacy" under the exemption.

## ARGUMENT

"FOIA was enacted to facilitate public access to Government documents and was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *CREW v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (marks and citation omitted).  So "[a]t all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'"  *ACLU v. DOJ*, 655 F.3d 1, 5 (D.C. Cir. 2011) (citation omitted).  "Because of FOIA's 'goal of broad disclosure,' the Supreme Court has 'insisted that the exemptions be 'given a narrow compass.'"  *CREW*, 746 F.3d at 1088 (citation omitted); *see also FBI v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed.").  "FOIA's 'limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'"  *CREW*, 746 F.3d at 1088 (citation omitted).  It is the Agency's burden to "establish[] that a claimed exemption applies."  *Id.*  The Denial here is improper.[2]

### The Agency Has Not Met Its Burden Of Proving That The Documents Are Subject To Withholding Under Exemption 6

Exemption 6 does not apply here.  Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  An agency must make two showings to withhold under Exemption 6:  first it must determine whether information sought is "contained in personnel, medical, or 'similar' files," *Wash. Post Co. v. HHS*, 690 F.2d 252, 260 (D.C. Cir. 1982), and then it must determine whether "disclosure would constitute 'a clearly unwarranted invasion of personal privacy,'" *id.*  The Agency, as with all Exemptions, bears the burden of showing that Exemption 6 applies.  *Dep't of State v. Ray*, 502 U.S. 164, 172 (1991).  And, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act."  *Wash. Post Co.*, 690 F.2d at 261.

### 1.  General Objection to Withholding Under Exemption 6

This appeal must be understood in context of the history of litigation engaged in by this Administration and others, which almost always conclude with the release of the information relating to visitors to the White House or even Mar-a-Lago.

---

[2] I seek only the release of names and email addresses of the visitors.  I do not seek any other PII, including social security numbers.

The Secret Service, for example, recently settled a lawsuit over the release of White House visitor logs, *see Public Citizen, Inc. v. Secret Serv.*, No. 17-cv-01669 (CRC).  As a result of that settlement, the Secret Service agreed to post agency component visitor records to their online reading rooms on an ongoing basis, as well as pay Public Citizen $35,000 in attorneys fees.  *Id.*  Now, the White House Office of Science and Technology Policy only redacts information relating to "the individuals were either: (1) minor children at the time of the visit; or (2) were interviewing for a position that they did not receive."[3]

Moreover, while still the subject of ongoing litigation due to the recalcitrance of the government, the Administration has even released at least *some* of the visitor records to Mar-A-Lago.[4]  As my colleague Tarini Parti reported, "The Trump administration on Friday turned over 22 names related to the Japanese prime minister's visit to Mar-a-Lago with the president."[5]  Moreover, it appears that it was not a lack of public interest in the records that caused the government to only release some records, but rather a separate dispute — one not at issue here — as to whether some records qualified as agency records.

And, of course, the prior Administration had a policy of releasing visitor logs of its own volition.[6]  It should be noted that that policy has not been expressly repudiated by this Administration.

Taking a contrary position on this appeal would, clearly, be nothing short of bad faith and weigh strongly in favor of an award of fees should BuzzFeed News be forced to litigate this request.

## 2.   The public interest in disclosure outweighs any individual privacy interest

Under Exemption 6, an agency must decide first "if disclosure would constitute an invasion of privacy, and how severe an invasion."  *Rural Hous. All. v. Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974).  Then, it must determine whether that privacy interest is outweighed by the countervailing public interest in disclosure.

### 2.1. The personal privacy interest is *de minimis*

Not all personal privacy interests count for the purposes of Exemption 6.  Here, there is little privacy interest to weigh.  Indeed, one court has suggested as much under similar circumstances.  *Judicial Watch, Inc. v. Secret Serv.*, 579 F. Supp. 2d 151, 154 (D.D.C. 2008)

---

[3] *See, e.g.*, Office of Science and Technology Policy Visitor Records Release, White House (Apr. 2018), https://www.whitehouse.gov/wp-content/uploads/2018/06/WAVES-Posting-April-2018.pdf; *see also* Justin Sink, *White House Publishes Some Agency Visitor Logs, Showing Lobbyist Meetings*, Bloomberg (Apr. 11, 2018), https://www.bloomberg.com/news/articles/2018-04-11/white-house-posts-lists-of-lobbyists-to-agencie s-after-lawsuit.
[4] Laura Jarret & Cristina Alesci, Trump administration withholds almost all Mar-a-Lago visitor logs, CNN (Sept. 15, 2017), https://www.cnn.com/2017/09/15/politics/secret-service-maralago-logs/index.html.
[5] Tarini Parti, The Government Just Released Mar-A-Lago Visitor Logs For The Japanese Leader's Trip. But That's It., BuzzFeed News (Sept. 15, 2017), https://www.buzzfeednews.com/article/tariniparti/the-government-just-released-mar-a-lago-visitor-logs-for.
[6] https://obamawhitehouse.archives.gov/goodgovernment/tools/visitor-records.

("relatively minor privacy invasion" by releasing the names of individuals who requested others to visit the White House).  And, as mentioned above, the Office of Science and Technology Policy, among other components, now routinely release records with visitor names disclosed.  Any suggestion that there is somehow a meaningful difference between visitors to White House offices and those to Air Force one is simply untenable.

There is also no privacy interest in information that has previously been made publicly available.  *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (no privacy interest in presidential candidate's offer to aid government in investigation where candidate made several public statements about same); *Billington v. DOJ*, 245 F. Supp. 2d 79, 85-86 (D.D.C. 2003) (information not protected where individuals "knew that they were speaking to a reporter on the record and therefore could not expect to keep private the substance of the interview").  We have learned through our reporting that multiple civilians — perhaps unsurprisingly — have posted photographs of their tours on social media.  This not only diminishes any purported privacy interest here, it shows that not even visitors think that there is anything private about these tours.  They freely share the fact of their attendance with the world.

### 2.2.  The public interest in disclosure is overwhelming

For the purposes of Exemption 6, the public interest at issue is that embodied by FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties."  *DOJ v. Reporters Comm.*, 489 U.S. 749, 773-76 (1989); *see also Advocates for Hwy. Auto Safety v. FHWA*, No. 98-306 (D.D.C. Oct. 13, 2011) ("When information sheds light on the inner workings of a government agency, there is a public interest in its release.").  This purpose applies with special force in the context of the identities of guests received by high-ranking members of the executive branch.  *Citizens for Responsibility & Ethics in Wash. v. DHS*, 592 F. Supp. 2d 111, 119 (D.D.C. 2009) ("Shielding such general information as the identities of visitors [to former Vice President Cheney's residence] would considerably undermine the purposes of FOIA to foster openness and accountability in government." (internal quotation omitted)); *cf. Wash. Post v. DHS.*, 459 F. Supp. 2d 61, 64 (D.D.C. 2006) (finding "visitor logs of physical access to the White House Complex" to be predicated on "time sensitive public interests").

The public interest in this case speaks for itself.  Indeed, even the Denial recognizes that "federal government activities and the affect on public confidence are matters of public concern."  *See* Denial.   And, indeed, the issue of whether President Trump received guests from Mar-a-Lago on Air Force One, and under what conditions, has been subject to substantial media attention.[7]  Because the records relate to who the Air Force gives preferential treatment

---

[7] Tarini Parti & Jeremy Singer-Vine, *Some Members of Trump's Exclusive Clubs Appear to Have Been Invited to an Air Force One Tour*, BuzzFeed News (July 9, 2018),
https://www.buzzfeed.com/tariniparti/trump-air-force-one-mar-a-lago-tour ("Private tours of Air Force One would be just another perk members of the president's clubs have gotten in the last two years.")
*See also* Renae Reints, *Members of Trump's Exclusive Clubs May Have Toured Air Force One*, Fortune (July 9, 2018), http://fortune.com/2018/07/09/air-force-one-trump-tours; Jen Kirby, *Trump's Mar-a-Lago Club Members Reportedly Got Offered Air Force One Tours*, Vox (July 9, 2018),
https://www.vox.com/2018/7/9/17549532/trump-air-force-one-tours-mar-a-lago ("Mar-a-Lago's initiation fee doubled shortly after his election, with members now getting a chance to dine near the country's Commander-in-Chief"); Kathryn Krawczyk, *Mar-a-Lago Members Apparently Got an*

to when it comes to special access to Air Force, and the subject matter therein has been covered widely in the media, this is precisely the kind of case where the public interest has been found to be significant. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."); *ACLU v. DOJ*, 655 F.3d 1, 12-13 (D.C. Cir. 2011) (public interest reaches any information that advances "the citizens' right to be informed about what their government is up to").

### 2.3.  The public interest significantly outweighs the privacy interest

Because there is no more than a *de minimis* privacy interest in mere identities of individuals who toured Air Force One, there is no need to conduct a balancing test and the records should be disclosed. *ACLU v. DOD*, 543 F.3d 59, 87 (2d Cir. 2008) ("we are not compelled to balance interests where there is no more than a de minimis privacy interest at stake.").

Even if there were, "Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *Dep't of Air Force v. Rose*, 425 U.S. 352, 381 n. 19 (1976).  Thus, Exemption 6's language creates "a balance tilted emphatically in favor of disclosure."  *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984).  That is true here especially where the potential invasion, as weighed against the public's understanding of who receives special treatment from the Government as a result of their associations, is relatively minimal.  *Judicial Watch*, 579 F. Supp. 2d at 154 (public interest in identities of persons requesting visitor access to the White House outweighed privacy interests of these individuals); *cf. Wash. Post v. DHS*, 459 F. Supp. 2d 61, 64 (D.D.C. 2006) (approving expedited processing of a FOIA request for identities of visitors to Vice President's residence since "the information [was] of vital public interest for an upcoming congressional election"); *EFF v. DNI*, 639 F.3d 876, 887 (9th Cir. 2010) (public interest in disclosure of corporate lobbyists clearly outweighed privacy interests).

Remarkably, the Agency concluded that the public interest here was not great enough to outweigh the privacy interests.  However, in addition to the tranche of media coverage casting serious doubt on that position, sixty-six members of Congress disagree with that assessment, having co-sponsored legislation that would require the release of visitor logs to any place where President Trump regularly conducts the public's business.  *See* S. 721-115th Congress: MAR-A-LAGO Act," https://www.govtrack.us/congress/bills/115/s721; H.R. 1711-115th Congress: MAR-A-LAGO Act, https://www.govtrack.us/congress/bills/115/hr1711.  The information sought here involves a relatively minimal invasion of privacy, if any at all, while the public interest, as demonstrated by media coverage and bills introduced in the United States Congress, is massive.

---

*Unexpected Perk: Air Force One Tours*, The Week (July 9, 2018), http://theweek.com/speedreads/783792/maralago-members-apparently-got-unexpected-perk-air-force-tours; Justin Wise, *Some Mar-a-Lago Members Appear to Have Been Invited to an Air Force One Tour*, The Hill (July 9, 2018), http://thehill.com/homenews/396108-some-mar-a-lago-members-appear-to-have-been-invited-to-an-air-force-one-tour.  Still more articles can be found here: https://tinyurl.com/y8hfvs3d (Google search results evidencing dozens upon dozens of news articles and additional information relating to the public's interest in these documents).

**The Agency Has Not Met Its Burden Of Proving That It's**
**Search Was Reasonably Calculated To Uncover All Relevant Documents**

FOIA requests must be liberally construed.  "If the agency can lightly avoid its responsibilities by laxity in identification or retrieval of desired materials, the majestic goals of [FOIA] will soon pass beyond reach."  *Founding Ch. of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).  Searches under FOIA must be adequate.  An inadequate search amounts to an improper withholding because it is not "reasonably calculated to uncover all relevant documents" that must be disclosed to a requester.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Judicial Watch, Inc. v. United States Secret Serv.*, 579 F. Supp. 2d 151, 153 (D.D.C. 2008) ("defendant's search [of White House complex visitor records] cannot be considered adequate until it covers all records under agency "control" at the time of plaintiff's FOIA request.")  In this case, the Denial should be reversed and the request remanded with directions to the Air Force to conduct a proper search.

While a particular document not turning up does not necessarily demonstrate an inadequate search, *Boyd v. DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007), the weight of authority holds that such a showing supports such a finding, *see, e.g.*, *Aguiar v. DEA*, 865 F.3d 730, 739 (D.C. Cir. 2017) ("failure to find a record that once existed" provides some evidence of an inadequate search); *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (summary judgment inappropriate in light of "well defined requests and positive indications of overlooked materials"); *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993) (holding that failure to identify particular documents known to exist weighed in favor of an inadequate search); *Wolf v. CIA*, 357 F. Supp. 2d 112, 119 (D.D.C. 2004) (failure to turn up a memorandum was evidence of the inadequacy of the search).

We are in receipt of evidence that additional records exist that should have turned up in the search but did not.  In this instance, we have learned that a civilian tour of Air Force One occurred between March 3, 2017 and March 5, 2017.  The responsive documents contain no record of such a tour though they do cover the date range above mentioned.  This weighs strongly in favor of a finding that an adequate search was not conducted, as documents known by BuzzFeed News to exist were not disclosed as requested.

\*       \*       \*

For the foregoing reasons, the Agency's decision should be reversed and the Request should be granted in full.  To the extent that it is affirmed, in whole or in part, please provide a detailed explanation for that decision.  Because this information is on a matter of great public interest, we request expedited treatment of this Appeal.  In any event, we trust that we will receive your decision within 20 business days as required by 5 U.S.C § 552(a)(6)(A)(ii).

Thank you for your prompt attention to this matter.  Please feel free to reach out to me at any time.