**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

BUZZFEED, INC.,

                            Plaintiff,

         -against-

U.S. DEPARTMENT OF THE AIR FORCE,

                            Defendant.

------------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _11/3/2020_____

**1:19-cv-01337-ALC-SN**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., District Judge:**

        Buzzfeed, Inc., a media corporation, submitted three Freedom of Information Act (FOIA) requests to the United States Department of the Air Force seeking information related to possible attendees of tours of Air Force One. The Court now considers motions for summary judgment by these two parties regarding whether certain redactions applied by the Air Force are authorized by 5 U.S.C. § 552(b)(6), "Exemption 6", which allows the withholding of personally identifying information unless the public interest in that information outweighs the individuals' privacy concerns. For the reasons that follow, the Court GRANTS summary judgment in favor of the Air Force and DENIES Buzzfeed summary judgment.

## BACKGROUND

        This case relates to FOIA requests seeking information about private individuals that may have received tours of Air Force One. There are three sources of requests for tours: (1) official requests, via the White House Military Office ("WHMO"), Presidential Airlift Group Commander and Air Force; (2) personal requests, for family and close friends of Presidential Airlift Group personnel; and (3) semi-official requests, from vendors, ground service specialists, etc., who are given a tour as a courtesy. Declaration of Lt. Col. Brent F. Osgood dated April 2, 2020, ECF No.

28 ("Osgood Decl.") ¶ 14. Tours are provided regularly to military members, their families, and other federal employees. Osgood Decl. ¶ 13. Some individuals, who may know those higher up in the executive branch, may receive invitations in a more personal manner, and the WHMO then makes their arrangements via email. Osgood Decl. ¶ 14. As these individuals and their family may not work for the military or even the federal government, the information required by the forms are obtained less formally, although the screening of individuals is similar. Osgood Decl. ¶ 14.

On November 16, 2017, via email to the Air Force FOIA office, Buzzfeed made a FOIA request for copies of the following records: "All spreadsheets, PDFs, and other documents containing lists of civilians invited or scheduled to partake in tours of Air Force One between Jan. 20, 2017 and the date on which the search for these records is completed." (Request #1). Osgood Decl. ¶ 3. Buzzfeed specifically asked that the names of the tour participants not be redacted, claiming the public interest in discovering those names outweighed any privacy interest of the individuals. Osgood Decl. ¶ 3.

On June 28, 2018, the Air Force responded to Request #1 by producing 62 pages of partially redacted responsive records: 27 pages of spreadsheets listing the dates and locations of various Air Force One tours, and providing names and other personal details for the individuals scheduled to take those tours; and 35 pages of Presidential Aircraft Tour Request forms, which are documents used by military personnel to request Air Force One tours for their friends and family members. Osgood Decl. ¶ 4.The Air Force redacted the names and other personally identifying information of the civilians and military personnel that appeared in the records pursuant to Exemption 6. Osgood Decl. ¶ 4. Buzzfeed administratively appealed the Air Force's response to Request #1, challenging, among other things, the application of Exemption 6. Compl. ¶¶ 20-22.

In July 2018, Buzzfeed published an article based on records produced by the Air Force asserting that "[s]ome members of President Donald Trump's exclusive Florida clubs appear to have been invited to an Air Force One tour last year." Tarini Parti & Jeremy Singer-Vine, *Some Members Of Trump's Exclusive Clubs Appear To Have Been Invited To An Air Force One Tour*, BUZZFEED, Jul. 9, 2018, available at https://www.buzzfeednews.com/article/tariniparti/trump-air-force-one-mar-a-lago-tour (last visited November, 2, 2020) ("Buzzfeed Article"). Specifically, the Buzzfeed Article alleged that three members of the Mar-a-Lago club and their wives received a tour of Air Force One in Palm Beach, Florida on February 18, 2017. *See id*. The Buzzfeed Article identified certain Mar-a-Lago members as possible recipients of Air Force One tours based on partially unredacted email addresses in the documents produced by the Air Force in response to Request # 1. *See id*.

On November 13, 2018, Buzzfeed submitted an additional request ("Request #2") to the Air Force for "copies of all records inviting individuals to participate in tours or visits of Air Force One" from January 1, 2016, through the date on which the search was completed. Osgood Decl. ¶ 5. In response, following the commencement of this litigation, the Air Force released 29 partially redacted pages of e-mails between Air Force One personnel and various tour invitees. Osgood Decl. ¶ 6. Those e-mails related to tour requests made outside of formal Air Force procedures: for example, requests from White House staffers or other non-military members of the Executive Branch. Osgood Decl. ¶ 6. The Air Force withheld the personally identifying information in these records—names, e-mail addresses, and physical addresses—pursuant to Exemption 6. *Id.* These emails to not confirm whether the person actually attended the tours. Declaration of Lieutenant Colonel Brent F. Osgood dated June 9, ECF No. 34 ("Second Osgood Decl.") ¶ 4. It was subsequently confirmed that these records do not "identify tour requesters" or "contain the names

of any White House staffers or other high-ranking members of the Executive Branch who requested these tours for the invitees." Second Osgood Decl. ¶ 5.

On November 13, 2018, Buzzfeed submitted a request ("Request #3") for "copies of all records that document any aspect of the procedures pertaining to Air Force One tours, including but not limited to: Records outlining the procedures for the issuance of invitations to tour Air Force One; Any and all records describing eligibility requirements of potential Air Force One tour attendees; Procedures outlining use of background checks of potential Air Force One tour attendees; [and] Records outlining the procedures for conducting the tours." Osgood Decl. ¶ 7. During the pendency of this litigation, the Air Force produced four records in response to that request, withholding only the names of military personnel that appeared in two of the records. Osgood Decl. ¶ 8.

Buzzfeed commenced this action on February 12, 2019, challenging the Air Force's application of Exemption 6 in the records responsive to Request #1, and the lack of production of records responsive to Requests #2 and 3. Compl. ¶¶ 36-49. In light of the Air Force's subsequent productions of records and the parties' discussions, Buzzfeed limited its challenge to the application of Exemption 6 "to the names of the people taking tours and the names of the people requesting tours on their behalf." Osgood Decl. ¶ 9.

On April 2, 2020, the Air Force filed a motion for summary judgment that their Exemption 6 redactions are proper. ECF No. 26. Therein, the Air Force argues it is entitled to summary judgment because the records at issue here are the types of records protected by Exemption 6, the privacy interests of the individuals identified in the records clear the Exemption's minimal threshold, and those privacy interests outweigh any public interest in disclosure. This motion was supported by the Declaration of Lieutenant Colonel Brent S. Osgood, Chief of the Information

Litigation Branch of the General Litigation Division of the Air Force Legal Operations Agency (AFLOA/JACL) at Joint Base Andrews, Maryland.

Buzzfeed filed a motion for summary judgment on May 4, 2020. ECF No. 30. Buzzfeed contends it is entitled to summary judgment that Exemption 6 is not applicable because Exemption 6 does not apply to the records at issue here, and any privacy interests are outweighed by the public interest in understanding what the government was up to. In its summary judgment motion, Buzzfeed also further limited its request that redacted material be release to "the names of the 'high ranking executive branch officers" that requested tours and their "personal friends or family". ECF No. 30 at 2 n.1.

The Air Force opposed Buzzfeed's motion on June 10, 2020. ECF No. 33-34. The accompanying Declaration of Lieutenant Colonel Osgood indicates that Buzzfeed further narrowed the scope of its request for disclosure to "such names that appear in the 29 pages of e-mails the Air Force produced in response to 'Request #2'." Second Osgood Decl. ¶ 3. Buzzfeed filed a reply on July 1, 2020. ECF No. 38.

## FREEDOM OF INFORMATION ACT AND EXEMPTION 6

"FOIA was enacted in order to 'promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed.'" *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005) (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999)). "FOIA strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act," which must be narrowly construed. *Nat'l Council of La Raza*, 411 F.3d at 355-56 (citations omitted). "The government bears the burden of demonstrating that an exemption applies to each item of

information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Florez v. Cent. Intelligence Agency*, 829 F.3d 178, 182 (2d Cir. 2016) (quoting *Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014)). However, "[a]ffidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden," and such affidavits "submitted by an agency are accorded a presumption of good faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009) (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).

FOIA's Exemption 6 permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Exemption 6 is intended to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" *Wood v. F.B.I.*, 432 F.3d 78, 86 (2d Cir. 2005) (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982)). "Whether the names and other identifying information about [an individual] may be withheld under Exemption 6 is a two-part inquiry. First, [a court] must determine whether the personal information is contained in a file similar to a medical or personnel file. In considering whether the information is contained in a 'similar' file, [a court] ask[s] whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file. At the second step of the analysis under Exemption 6, [a court] balance[s] the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a 'clearly unwarranted invasion of personal privacy.'" *Id.* (internal citations omitted).

STANDARD OF REVIEW

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 290 (S.D.N.Y. 2012) (quoting *Bloomberg L.P. v. Bd. of Governors of Federal Reserve Sys.*, 649 F.Supp.2d 262, 271 (S.D.N.Y.2009)); *accord White Coat Waste Project v. U.S. Department of Veterans Affairs*, 404 F. Supp. 3d 87, 95 (D.D.C. 2019) ("The 'vast majority' of FOIA cases can be resolved on summary judgment.") (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). When parties cross-move for summary judgment, a court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011). "[A] district court must review *de novo* an agency's determination to withhold information requested under FOIA." *Florez*, 829 F.3d at 182. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## DISCUSSION

First, the Court considers whether the personal information at issue here, the names of those scheduled to take tours, is contained in a file similar to a medical or personnel file such that it is encompassed by Exemption 6. The Court concludes it is.

The first step of the Exemption 6 inquiry is "not a difficult hurdle to clear, as the Second Circuit considers 'a record . . . a "similar file" if it contains personal information identifiable to a

particular person.'" *Osen LLC v. United States Cent. Command*, 375 F. Supp. 3d 409, 423 (S.D.N.Y. 2019), *rev'd in part*, *vacated in part*, 969 F.3d 102 (2d Cir. 2020) (citing Cook v. Nat'l Archives & Records Admin., 758 F.3d 168, 175 (2d Cir. 2014)); s*ee also Washington Post*, 456 U.S. at 602 (concluding that "Congress [did not mean] to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information" and "[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual"). The records at issue here contain the names, birthdates, citizenship information, and contact information of civilians, as well as the names and contact information of military and other government personnel. Osgood Decl. ¶¶ 4, 6, 8. The Court concludes, as others have, that such identifying information satisfies the first step of Exemption 6. *See, e.g., Wood v. FBI*, 432 F.3d 78, 85-86 (2d Cir. 2005) (applying Exemption 6 to names and other identifying information of government investigators found in administrative investigative record); *Prechtel v. Federal Commc'ns Comm'n*, 330 F. Supp. 3d 320, 329 (D.D.C. 2018) (concluding "catchall provision 'similar files' includes any "[g]overnment records on an individual which can be identified as applying to that individual" and "encompasses email addresses.")

Buzzfeed's main argument to the contrary is that *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019), which discusses another FOIA exemption, holds "that courts may not expand or constrict the scope of FOIA from its plain meaning based on policy considerations". ECF No. 30 at 5. This argument does not persuade because there is no effort to import a constraint based on policy considerations here. Rather, this Court's conclusion is consistent with the Supreme Court construction of "similar files" in *United States Department of State v. Washington Post Co.* 456 U.S. 595, 600 (1982) (holding that with Exemption 6 Congress "was creating a 'general exemption' for information contained in 'great quantities of files,'" which

is narrowed by "the 'clearly unwarranted invasion of personal privacy' language as a 'limitation' which holds Exemption 6 'within bounds.'")

Accordingly, the Court turns to the balancing of the privacy interest of those individuals' whose names have been redacted against the public's interest in disclosure. "The balancing analysis for FOIA Exemption 6 requires that [a court] first determine whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." *Long v. OPM*, 692 F.3d 185, 191 (2d Cir. 2012) (citing *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008)). "But the bar is low: 'FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests.'" *Id.* (citing *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (2d Cir. 1992)).

To be sure, "[n]ames and other identifying information do not always present a significant threat to an individual's privacy interest." *Wood*, 432 F.3d at 88; *accord U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991) ("We emphasize, however, that we are not implying that disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals on the list."). "[W]hether disclosure of a list of names is a significant or a *de minimis* threat depends upon the characteristics revealed by virtue of being on the particular list, and the consequences likely to ensue." *Ray*, 502 U.S. at 176 n.12 (internal quotation marks and alterations omitted). Individuals not only have an obvious privacy interest in being free from retaliation, harassment, embarrassment, or stigma, *see Ray*, 502 U.S. at 176-77; *see also Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1026 (9th Cir. 2008); they also have a privacy interest in simply "keeping personal facts away from the public eye." *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 769 (1989).

9

Here, the Air Force contends the privacy interests of the individuals that were signed up to take Air Force One tours is "obvious". ECF No. 27 at 8. In particular, it contends that "the records indicate these individuals' locations at particular times on particular dates"; "reveal the individuals' connections with military personnel"; and that these people "have an interest in not receiving intrusive contacts related to [the tour] requests, which are generally routine in nature" and "not being brought into potential controversies stemming from an invitation to take a tour which has no real monetary or intrinsic value." ECF No. 27 at 8, Osgood Decl.¶ 12.[1]

However, Lieutenant Colonel Osgood's Second Declaration walks back at least two of these rationales. The suggestion that the records indicate "these individuals' locations at particular times on particular dates" is undercut by Lieutenant Colonel Osgood's later assertion that "although these emails establish that certain individuals were invited to tour Air Force One, they do not establish whether those individuals actually participated in tours." Second Osgood Decl. ¶ 4. The allegation that a privacy interest is implicated by the fact that the records would "reveal the individuals' connections with military personnel" is also undermined by the Second Osgood Declaration, which confirms "that these specific records do not identify tour requesters with whom these invitations originated", Second Osgood Decl. ¶ 5, and therefore do not reveal any specific connections with military personnel.

---

[1] The Air Force also argues that the individuals have an interest in protecting such personally identifying information as birthdates, phone numbers, and email addresses, which could be used by others to the detriment of the individuals. Osgood Decl. ¶ 12. Because Buzzfeed does not seek such information, this rationale is irrelevant. The Air Force also offers certain rationales that are unique to service members and civilian employees, such as a policy of not disclosing their personal information to protect them from potential terrorist threats through their affiliation with the military. Osgood Decl. Osgood Decl. ¶ 11. No such names are at issue here, so the Court does not consider this argument.

That leaves the purported privacy interest in not receiving intrusive contacts related to the tours or being brought into potential controversies stemming from an invitation to take a tour which has no real monetary or intrinsic value. In response, Buzzfeed argues that any such controversy is entirely speculative, but in any event, it is not the "invitation" that would be bringing any such "controversy," but the decision to accept it. ECF No. 30 at 6. It further argues that the contention the tours have no value is "unsupported and naïve" because "of course receiving special access to such a prestigious government asset has value." ECF No. 30 at 6.

The Court agrees that the Air Force provides no basis for its argument that "real monetary" value is a relevant consideration or that access to Air Force One has no "intrinsic value". However, it is certainly conceivable that disclosure of the individual identities "could result in unwanted contact or harassment". *See N.Y. Times Co. v. United States Dep't of the Treasury*, No. 09 CIV. 10437 FM, 2010 WL 4159601, at *4 (S.D.N.Y. Oct. 13, 2010). Indeed, Buzzfeed has already published an article making public names of persons they believe took the tours, which article itself details unwanted press contacts. *See* Buzzfeed Article. The Court does not disagree with Buzzfeed that "when focusing on the consequences of disclosure of an individual's association with a particular list, the degree to which such an association is voluntary is relevant." *New York Times Co.*, 2010 WL 4159601 at *6. However, the Court still finds more than a *de minimis* privacy interest here.

The Court therefore considers whether the privacy interest is outweighed by the public interest. "The only public interest found to be relevant in FOIA balancing is 'the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Associated Press*, 549 F.3d at 66 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)).

The Air Force argues that the release of the names would not advance the public interest. In their current redacted state, "[t]he documents released reveal that the government has processes in place by which family, friends, and acquaintances of government officials, military members, and the like, may be granted tours of Air Force One." Osgood Decl. ¶ 13. The Air Force contends Buzzfeed "has not shown how the release of private third-party names associated with routine tours of Air Force One would vindicate the public interest", nor "provide[d] evidence of any impropriety or negligence on the part of the federal government with respect to all but two of the tours and six of the attendees reflected in these records". ECF No. 27 at 9.

Buzzfeed counters that the public interest would be advanced by disclosure of the withheld names because "arranging these tours is part of [the Air Force's] responsibilities or would show what it 'is up to' with regard to how [tours] are arranged or to whom access is granted based on these nonroutine invitations and personal connections". ECF No. 30 at 8. Buzzfeed further argues that disclosure of the withheld names would show whether "high-ranking members of the Executive Branch" were "using their positions to arrange for [] tours for their friends and families, and whether, for example, they were offered to campaign donors or members of the private club in which the President spends a significant amount of time at significant public expense and in which he maintains an economic interest." ECF No. 30 at 8. Finally, Buzzfeed argues that "whether or not anything improper occurred is irrelevant because these records would show what Defendant's policies are with regard to nonroutine access to Air Force One tours, namely, what 'high-ranking' officials have enough pull to command such a tour and for whose benefit are they pulling." ECF No. 38 at 4.

However, the Second Osgood Declaration's clarification that no high-ranking officials are named in the at-issue records lets much of the air out of Buzzfeed's second and third formulations

of a public interest described above. At issue here is only the public interest implicated by revealing the names of those for whom tours were requested. Even if that information could be extrapolated to implicate high-ranking officials, "courts have been skeptical of recognizing a public interest in this 'derivative' use of information, which is indirect and speculative." *Long v. OPM*, 692 F.3d 185, 194 (2d Cir. 2012) (citing *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 292 (2d Cir. 2009) ("We emphasize that the focus, in assessing a claim under Exemption 6, must be solely upon what the requested information reveals, not upon what it might lead to.")).

Once the derivate public interests proposed by Buzzfeed are set aside, this Court reaches the conclusion that any additional public interest advanced by the release of names of third-party private citizens is relatively small. Indeed, the protocol documents that Buzzfeed has already received indicate "how [tours] are arranged" and indicate the category of individuals "to whom access is granted based on these nonroutine invitations and personal connections". It is clear that "personal friends or family of high-ranking executive branch officers" may access tours through channels different from those available to military or civilian federal employees, which are unavailable to an average person without such connections. Any further gain to the public interest in disclosing the names of specific persons who have taken or been offered Air Force One tours does not outweigh those individuals' privacy interests.

CONCLUSION

For the reasons above, the Air Force's motion for summary judgment is GRANTED and Buzzfeed's motion is DENIED. The clerk of Court is respectfully directed to close this case.

**SO ORDERED.**
**Dated:        New York, New York**
**                  November 3, 2020**

ANDREW L. CARTER, JR.
United States District Judge